# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**ARTHUR GILFUS,**

    Plaintiff,

v.                                      Case No.:

**MCNALLY CAPITAL, LLC.,**

    Defendants.

_____/

## COMPLAINT

Plaintiff, ARTHUR GILFUS (hereinafter referred to as "Plaintiff"), sues Defendant, MCNALLY CAPITAL, LLC, (hereinafter referred to as "Defendant") and alleges:

## JURISDICTIONAL AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1), as Defendant has diversity of citizenship with Plaintiff, and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

2. This Court has personal jurisdiction over Defendant because Defendant has a substantial connection to this forum, a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this forum, and the business which was the subject of the transaction is located in this district.

3. Venue is proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in Tampa, Florida, and the business which was the subject of the transaction is located in this district.

4. At all times material, Plaintiff was a resident and citizen of Florida.

5. Defendant is a corporation whose principal place of business is in Chicago, Illinois. Defendant engages in and transacts business in the State of Florida.

## FACTUAL ALLEGATIONS

6. Plaintiff, along with two potential partners with extensive experience within the construction equipment sales industry (hereinafter the "Industry"), had been closely watching the Industry for an opportunity to package a deal to acquire and rebuild a struggling business, by locating and advising a purchaser when the right opportunity arose.

7. Plaintiff conducted a thorough analysis, from structuring a deal, locating capital versus bank debt, and finding the ideal investor to elevate the occasion to invest not just by introducing prospects to susceptible opportunities, but by creating whole restructures in Florida to ensure a successful outcome from the bones of struggling businesses. This included a first 100-day plan, stores to close, and acquisitions, etc. (collectively referred to as the "Business Plan").

8. Plaintiff did not initially approach Defendant with his Business Plan. With his partners, Plaintiff originally spoke to a few other possible deal-generating firms, including but not limited to John Deere ("Deere") and NCP Capital.

9. Deere rejected one opportunity as Deere did not want a "Wall Street type" private equity firm to own an iteration of a franchise, only to "flip" it—investment bank style. Deere instead sought a long-term equity partner.

10. After a few unsuccessful pitches, Plaintiff's contact at NCP Capital advised him that Plaintiff needed to find a "family operation."

11. Consequently, Plaintiff spoke to other options, including brokers, and gathered knowledge on valuations and how to create a detailed finance plan from inside information. This information proved invaluable going forward.

12. Accordingly, Plaintiff and his partners made arrangements to meet with David Lovejoy of McNally Capital, LLC.

13. After learning that Defendant was enthusiastic and interested in the Business Plan, Plaintiff set up a teleconference on or about January 3, 2017, to discuss the opportunity further.

14. During the teleconference, Ward McNally of McNally Capital, LLC, indicated that the acquisition was the "kind of deal [they] like to do," and Plaintiff and Defendant signed a Non-Disclosure Agreement (the "First NDA").

15. Plaintiff identified Nortrax, Inc. ("Nortrax") as a primary potential opportunity for the Business Plan he had developed.

16. Per Defendant's request, Plaintiff shared confidential information with Defendant immediately after executing the First NDA, including information that could only have come from inside Nortrax.

17. Defendant did not develop this information before receiving it from an external source, namely Plaintiff.

18. Plaintiff provided Defendant with his detailed Business Plan, containing insider information, under strict confidentiality, and upon Defendant's request.

19. The parties expressly agreed that Plaintiff and his partners needed anonymity, and that none of the sensitive information obtained would be shared without express approval from all parties.

20. Plaintiff and his partners expressed an expectation that in return for any deal contemplated with Defendant, they would receive as consideration, equity within the company, a finder's fee, and an employment contract. Defendant understood and agreed to this expectation as a term going forward.

21. Defendant expressed enthusiasm, claiming there would be many optimal customers, and that it envisioned Plaintiff would be sent on a roadshow to sell the opportunity, as he had best command of the details of the deal. No such roadshow ever took place.

22. After a number of detailed substantive telephone calls, texts, and meetings, a second NDA (the "Second NDA") was required. (The First NDA and the Second NDA are hereinafter referred together as the "NDA").

23. Over the course of approximately eight (8) months, Plaintiff: (1) introduced Defendant to key individuals within the agricultural world far beyond the scope of Defendant's typical business; (2) discussed with Dobbs Management Services ("Dobbs") the agricultural and construction split Business Plan; and (3) educated Defendant as to the Industry.

24. Defendant increasingly dealt with Frank McGrew ("McGrew"), who had been introduced as Dobbs' "trusted advisor" and began to marginalize Plaintiff and his partners.

25. It became readily apparent to Plaintiff that Dobbs was the only prospective buyer and there will be no other suitors or any "dog and pony" road show.

26. It also became obvious that Dobbs and McGrew were discussing implementation of the very Business Plan that Plaintiff had presented utilizing all of the confidential information which Plaintiff provided pursuant to the NDA and Defendant's repeated promises of confidentiality.

27. During a meeting at Dobbs' headquarters in Memphis, Tennessee, the same Business Plan was in the possession of Dobbs' representatives. Dobbs has never had a business presence within the Industry previously.

28. At this meeting, it became readily apparent that Plaintiff and his partners were being marginalized, if not completely eliminated from the business transaction, and it appeared they would not be getting a finder's fee, equity, or employment.

29. Plaintiff ultimately confronted Defendant regarding this breach and was told "it's the golden rule, them that's got the gold make the rules."

30. Subsequently, Defendant has not compensated Plaintiff in any respect.

31. Nonetheless, Defendant, with Dobbs, purchased Nortrax from Deere following the Business Plan. Defendant then made a public announcement regarding origination of the purchase. See "Exhibit A."

## COUNT I
### BREACH OF CONTRACT

32. Plaintiff realleges and incorporates paragraphs one (1) through thirty-one (31) above, as if fully set forth herein.

33. Plaintiff and Defendant entered into the NDA, on or about January 3, 2017, pursuant to which the parties agreed to protect and prevent the other, directly or indirectly, from dissemination of certain confidential, proprietary information. See "Exhibit B."

34. The NDA was executed after multiple confidential and substantive calls and meetings between Plaintiff and Defendant. See as "Exhibit C."

35. Both parties entered into the NDA with the understanding that the instruments were binding and enforceable, definite and certain upon all essential terms with the intent of a go-forward concern.

36. Pursuant to the NDA, Plaintiff shared confidential information with Defendant, including information that could only come from inside Nortrax.

37. Plaintiff shared his detailed Business Plan with Defendant under a mutual understanding of strict confidentiality that none of the sensitive confidential information would be shared without express prior approval from Plaintiff.

38. Plaintiff also introduced Defendant to key individuals within the Industry, discussed the agricultural and construction split Business Plan, and educated Defendant as to the Industry all pursuant to the NDA.

39. Defendant materially breached the NDA when it shared and used the confidential information Plaintiff provided to discuss implementation of the Business Plan presented by Plaintiff with at least one known third party in violation of the NDA. To wit: Dobbs.

40. Plaintiff is aware that the Business Plan subject to the NDA was already in the possession of Dobbs during the meeting in Memphis, Tennessee.

41. Plaintiff never authorized the disclosure of such information to any third party, or for the information to be used to transact business in his absence.

42. Defendant's material breach of the NDA facilitated a deal between Defendant and Dobbs to purchase Nortrax while excluding Plaintiff.

43. As a direct and proximate result of this material breach, Plaintiff suffered damages.

44. Plaintiff was completely eliminated from the transaction and suffered damages to the effect of not receiving any finder's fee, equity, or the employment he was promised.

**WHEREFORE**, Plaintiff hereby sues and demands judgment against Defendant for damages, in excess of seventy-five thousand dollars ($75,000), plus interest, costs, and such other relief as the Court deems just and proper.

## **COUNT II**
### **BREACH OF FIDUCIARY DUTY**

45. This is an action for damages against Defendant for breach of duties owed by Defendant to Plaintiff.

46. Plaintiff realleges and incorporates paragraphs one (1) through thirty-one (31) above, as if fully set forth herein.

47. Plaintiff and Defendant entered into a business relationship of trust and confidence where Defendant acquired a superior position to Plaintiff due to the value of key information and contacts they were gaining through Plaintiff.

48. There existed a fiduciary duty between the parties requiring that they deal with each other in the utmost good faith, fairness, and honesty.

49. Defendant promised to protect Plaintiff's interest and hard work developing the Business Plan by providing Plaintiff in return equity in the company, a finder's fee, and an employment contract.

50. Upon entering into the NDA, Defendant also acquired a superior position to that of Plaintiff.

51. Defendant abused this superior position, and breached its promises to protect Plaintiff's interests, to Plaintiff's detriment.

52. Defendant breached its fiduciary duties, trust, and confidence owed to Plaintiff by sharing and using the confidential information Plaintiff provided to discuss implementation of the Business Plan presented by Plaintiff with a third party in direct violation of the NDA.

53. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff suffered damages.

54. Plaintiff was completely eliminated from the transaction and suffered damages to the effect of not receiving any finder's fee, equity, or the employment he was promised.

**WHEREFORE**, Plaintiff hereby sues and demands judgment against Defendant for damages, in excess of seventy-five thousand dollars ($75,000), plus interest, costs, and such other relief as the Court deems just and proper.

## COUNT III
### BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

55. Plaintiff realleges and incorporates paragraphs one (1) through thirty-one (31) above, as if fully set forth herein.

56. Both parties entered into the NDA with the understanding that the instruments were binding and enforceable, definite and certain upon all essential terms.

57. Pursuant to the covenants implied by law in the NDA, Defendant warranted to Plaintiff that it would act in good faith and would deal with Plaintiff fairly at all times throughout the duration of the NDA for the purpose of a go-forward Business Plan.

58. Defendant knew or should have known that Plaintiff relied on this covenant of good faith and fair dealing when Plaintiff entered into the NDA.

59. Defendant breached its duty of good faith and fair dealing owed to Plaintiff by: (a) disclosing confidential information to Dobbs without Plaintiff's express consent in violation of the NDA, (b) utilizing the confidential information provided by Plaintiff to transact a deal completely excluding Plaintiff, and (c) frustrating Plaintiff's expectation to receive equity in the company, a finder's fee, and an employment contract in exchange for the confidential information provided to Defendant.

60. Plaintiff has retained the undersigned law firm to represent his interests in this action and is obligated to pay the firm a reasonable fee for its professional services based on the Fee Agreement between Plaintiff and his counsel.

61. As a direct and proximate result of these breaches, Plaintiff has suffered and continues to suffer substantial damages.

**WHEREFORE**, Plaintiff hereby sues and demands judgment against Defendant for damages, in excess of seventy-five thousand dollars ($75,000), plus interest, costs, and such other relief as the Court deems just and proper.

## COUNT IV
### PROMISSORY ESTOPPEL

62. Plaintiff realleges and incorporates paragraphs one (1) through thirty-one (31) above, as if fully set forth herein.

63. Defendant promised to provide Plaintiff with equity in the purchase of the new company, a finder's fee, and an employment contract in consideration for Plaintiff providing Defendant with key confidential information and a Business Plan.

64. Defendant made these promises intending to induce Plaintiff to provide the confidential key information Plaintiff held about the Industry, along with Plaintiff's developed Business Plan.

65. Defendant knew that its promises would induce Plaintiff to provide such information.

66. Plaintiff provided confidential information to Defendant, which Defendant would not have otherwise had access to, in reliance on the promises made by Defendant, for the purposes of a go-forward Business Plan.

67. Defendant utilized the confidential information and Business Plan provided by Plaintiff to Plaintiff's detriment and did not provide Plaintiff with equity in the new company, a finder's fee, or an employment contract.

68. Plaintiff has lost the value of the confidential information which he provided to Defendant under terms of confidentiality as he is no longer able to implement or participate in the Business Plan he created with that information.

69. Enforcement of the promises made by Defendant to Plaintiff is necessary to avoid injustice.

**WHEREFORE**, Plaintiff hereby sues and demands judgment against Defendant for damages, in excess of seventy-five thousand dollars ($75,000), plus interest, costs, and such other relief as the Court deems just and proper.

### COUNT V
#### UNJUST ENRICHMENT/QUANTUM MERUIT

70. Plaintiff realleges and incorporates paragraphs one (1) through thirty-one (31) above, as if fully set forth herein.

71. Plaintiff conferred substantial benefits upon Defendant by signing an NDA, providing Defendant with key valuable information, a Business Plan, introduction to individuals within the Industry far outside Defendant's normal realm of business, and education as to the Industry.

72. Defendant voluntarily accepted and retained the benefits conferred by Plaintiff without paying for the same.

73. Defendant utilized this very information in purchasing Nortrax with Dobbs.

74. Defendant failed to provide consideration for the benefits it received from Plaintiff.

75. It would be inequitable for Defendant to retain those benefits without paying the fair value thereof to Plaintiff.

**WHEREFORE**, Plaintiff hereby sues and demands judgment against Defendant for damages, in excess of seventy-five thousand dollars ($75,000), plus interest, costs, and such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable in the above-entitled action.

Respectfully submitted this 4th day of December, 2018.

> /s/ Noel P. McDonell
> Noel P. McDonell
> Florida Bar No.: 0899232
> Bryen N. Hill
> Florida Bar No.: 0095993
> Macfarlane, Ferguson & McMullen
> 201 N. Franklin Street
> Suite 2000
> Tampa, FL 33602
> (813) 273-4200 – Telephone
> (813) 273-4396 – Facsimile
> npm@macfar.com
> bnh@macfar.com
> vac@macfar.com