UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HPD Advisors,

    Plaintiff,

v.                                                       Case No: 8:18-cv-2941-T-36CPT

MCNALLY CAPITAL, LLC.,

    Defendant.
_____/

## **ORDER**

This matter comes before the Court upon Defendant McNally Capital LLC's Combined Motion to (1) Dismiss Plaintiff Gilfus' Action under Federal Rule 41(b); and (2) Dismiss Non-Party HPD Advisors' Complaint Under Federal Rule 24, or in the Alternative, 12(b)(6) (Doc. 35), and Plaintiff's response thereto (Doc. 36). In the motion, Defendant argues that Plaintiff abandoned his lawsuit by failing to amend his complaint within the time permitted by the Court's order pursuant to Federal Rule of Civil Procedure 41(b). Doc. 35 at 4-7. Defendant further argues that HPD Advisors ("HDP"), a non-party to this case, failed to seek or obtain leave to intervene before filing the First Amended Complaint in its name. *Id.* at 7-9. Finally, Defendant argues that the First Amended Complaint should be dismissed for failure to state a claim. *Id.* at 10-15.

HPD responds that the originally-named Plaintiff, Arthur Gilfus, did not abandon his claims because he simply substituted the name of the party plaintiff pursuant to Federal Rule of Civil Procedure 15(c)(1)(C) and Rule 17(a)(3). Doc. 36 at 4. HDP contends that pursuant to these Rules, it can insert itself into the lawsuit by filing an amended pleading, and that it need not intervene. *Id.* at 6. Finally, HDP argues it has stated a claim on the merits. *Id.* at 6-8. The Court, having considered the motion and being fully advised in the premises, will grant Defendant's

Motion to Dismiss in part and deny the motion in part. The Court will strike the First Amended Complaint filed by HDP and grant Gilfus one final opportunity to file an amended complaint.

I.   **BACKGROUND**[1]

Arthur Gilfus formed HDP, a partnership, with his two partners, Mark Hollister and Terry North. Doc. 34 ¶ 6. Gilfus is extensively experienced with the construction equipment sales industry and closely monitored the industry to identify potential deals to acquire and rebuild struggling businesses. *Id.* ¶ 8. Gilfus prepared an analysis before identifying specific partnership prospects that analyzed structuring a deal, identifying and locating capital, finding an ideal investor, establishing a first 100-day plan, and identifying stores to close and acquisitions to be made (the "Business Plan"). *Id.* ¶ 9.

HDP initially approached possible deal-generating firms, including John Deere ("Deere") and NCP Capital, about the Business Plan. *Id.* ¶ 10. After several unsuccessful pitches, HDP's contact at NCP Capital recommended Plaintiff find a "family operation" to pitch the Business Plan to because it would be better suited to family operations. *Id.* ¶ 13. Defendant McNally Capital, LLC ("McNally") is such a firm and it manages direct investment and merchant bank services for its family office partners and portfolio companies. *Id.* ¶ 15.

In early January 2017, HDP set up a teleconference with representatives of McNally, who had expressed interest in the Business Plan, to discuss the opportunity. *Id.* ¶¶ 27-28. Prior to any meetings, McNally executed a Non-Disclosure Agreement (the "First NDA"). *Id.* ¶ 17. The NDA was between McNally and " '[a]n entity to be formed including the following individuals: Terry

---

[1] The following statement of facts is derived from the First Amended Complaint (Doc. 34), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

North, Art Gilfus, Mark Hollister related to the Nortrax Venture' ("Company") . . . ." Doc. 34-1 at 2. The Nortrax Venture owns retail establishments that serve as dealerships for Deere equipment and was a primary potential opportunity identified by HDP. Doc. 34 ¶¶ 23-24.

> The First NDA provides that McNally:
>
> shall treat any information concerning Company (whether prepared by the Company, its advisors or otherwise) which is furnished to McNally by or on behalf of the Company and identified in writing as confidential to the Company (hereinafter collectively referred to as the "Evaluation Materials") in accordance with the provisions of this letter and that McNally and Company ("Agreement") shall take or abstain from taking certain other actions as set forth below.
>
> McNally agrees that the Evaluation Materials shall be used for the purpose of evaluating a possible transaction between the Company and McNally, and that such information shall be kept confidential by McNally, its advisors, and its clients; provided, however, that (i) any of such information may be disclosed to its officers, employees, advisors, clients, agents, potential financing sources and representatives (collectively "Representatives") who need to know such information for the purpose of evaluating any such possible transaction between the Company and McNally …
>
> ***
>
> Unless and until a definitive agreement between the Company and McNally with respect to the transaction which is the subject of this letter has been executed and delivered, except for the matters specifically agreed to in this letter, neither the Company nor McNally shall be under a legal obligation of any kind whatsoever with respect to such a transaction by virtue of this letter or any written or oral expression with respect to such a transaction by any of the Company's directors, officers, employees, agents, or any other representatives or the Company's advisors or representatives thereof.

Doc. 34-1 at 2–3. The First NDA also includes a choice of law provision stating that it will be "construed in accordance with the laws of the State of Illinois . . . ." *Id.* at 3.

After the First NDA was executed, Gilfus prepared and sent to McNally a customized business plan tailored to McNally's needs, following which HDP set up the early January 2017 teleconference with McNally. Doc. 34 ¶¶ 20-21. During the teleconference and at McNally's request, HDP shared confidential information with McNally regarding confidential Evaluation

3

Material for the business opportunity. *Id.* ¶ 25. This information could only have come from HDP because of its professional knowledge and experience from inside Nortrax. *Id.*

Also during the teleconference, Gilfus explicitly expressed his expectation that in return for any deal contemplated with McNally, HDP would receive equity within the company, a finder's fee, and employment contracts as consideration. *Id.* ¶ 27. McNally expressed that it understood and agreed to these expectations before HDP provided confidential information and connections. *Id.* ¶ 28. HDP would not have proceeded with providing valuable and confidential information without such reassurances and was induced to provide the confidential business plan by these reassurances. *Id.* Moreover, both during the teleconference and during a February in-person meeting between HDP and the Managing Partner of McNally, Frank McGrew, McNally made oral promises to HDP that HDP would receive remuneration in the form of equity, a finder's fee, and employment contracts following the transaction implementing HDP's business plan. *Id.* ¶ 29.

Subsequently, and after detailed meetings and calls, John Deere Construction & Forestry Company and McNally entered into a Mutual Non-Disclosure Agreement (the "Second NDA"), dated March 6, 2017. *Id.* ¶ 31; Doc. 34-3. HDP attached a copy of the Second NDA to the First Amended Complaint, but the copy is not signed by John Deere Construction & Forestry Company. Doc. 34-3 at 5. Shortly after the date of the Second NDA, on March 15, 2017, HDP signed a "Joinder to Mutual Non-Disclosure Agreement" (the "Joinder Agreement") acknowledging receipt of the Second NDA. *Id.* at 6. In relevant part, the Joinder Agreement states:

> You [HDP] are considering assisting McNally with its investigation of proposed business transactions between the Parties for the Purpose of the Agreement and, in consideration for (a) McNally considering your involvement and (b) the disclosure of Discloser's Confidential Information to you solely in connection with your evaluation of the proposed business transactions, you hereby agree to be bound by the terms and conditions of the Agreement regarding the confidentiality and use of

4

> Discloser's Confidential Information applicable to Representatives (as defined in the Agreement). Further, you agree that neither you nor your Affiliates will, within two years of the date of this Joinder, invest in, support or otherwise participate in any business transactions with Deere unless you can prove by clear and convincing written documentation that you were aware of the business transaction and had already taken material steps to participate prior to the signing of this Joinder.

*Id*. Gilfus executed the Joinder Agreement on behalf of HDP. *Id*.

Over a period of eight months, Gilfus introduced McNally to key individuals within the agricultural world, discussed with Dobbs Management Services ("Dobbs")—a family-run equity investment firm that previously had no presence in the construction equipment industry—HDP's unique agricultural and construction split business plan, and educated McNally as to the construction equipment sales industry. Doc. 34 ¶ 32. Dobbs and McGrew began to marginalize HDP and it became apparent that they intended to implement HDP's business plan as their own and use the confidential information HDP provided pursuant to the First NDA. *Id.* ¶ 34-35.

Indeed, during a meeting held at Dobbs' headquarters in Memphis Tennessee, Dobbs had possession of HDP's business plan, despite Dobbs never having a prior presence in the industry. *Id.* ¶ 37. At the meeting, it was apparent to HDP that its involvement was being marginalized and that Gilfus and his partners would not be getting a finder's fee, equity or employment, despite the prior assurances. *Id.* ¶ 38. Gilfus confronted McNally on the lack of compensation, to which McNally responded, "haven't you heard of the golden rule? It's them that's gots the gold that makes the rules." *Id.* ¶ 39.

Dobbs and McNally ultimately did not compensate HDP in any respect. *Id.* ¶ 40. Accordingly, Gilfus filed the instant action. In the original Complaint, Gilfus raised claims for breach of contract, breach of fiduciary duty, breach of implied duty of good faith and fair dealing, promissory estoppel, and unjust enrichment/quantum meruit. Doc. 1 ¶¶ 32-75. This Court entered a detailed Order dismissing the claims for breach of contract, breach of fiduciary duty, promissory

estoppel, and unjust/enrichment quantum meruit without prejudice, and dismissing the claim for breach of implied duty of good faith and fair dealing with prejudice.  Doc. 32 at 14.

Following this Court's Dismissal Order, a First Amended Complaint was filed by HDP. Doc. 34.  No motion to intervene or motion to substitute was filed prior to HDP filing the First Amended Complaint in its name.  Additionally, counsel read only the docket entry, without opening the Dismissal Order, meaning that it was filed without the benefit of this Court's analysis or directions.  Doc. 36 ¶ 5 n.2.  The First Amended Complaint raises two claims against McNally: Count I alleges a claim for promissory estoppel and Count II alleges a claim for unjust enrichment/quantum meruit.  Doc. 34.  ¶¶ 42.58.  McNally filed the instant Motion to Dismiss requesting that the First Amended Complaint be dismissed with prejudice.  Doc. 35.

## II.     LEGAL STANDARD

### A.     Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.  *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Furthermore, mere naked assertions are not sufficient.  *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (internal citation omitted). The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id*.  In addition to including "a short and plain statement of the claim

showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2); *Ashcroft*, 556 U.S. at 677–78, each claim must be "limited as far as practicable to a single set of circumstances," and each claim founded on a separate transaction or occurrence must be stated in a separate count or defense if doing so would promote clarity, Fed. R. Civ. P. 10(b).

### B. Federal Rule of Civil Procedure 41(b)

Rule 41(b) of the Federal Rules of Civil Procedure provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

"Rule 41(b) recognizes the inherent authority of district courts to involuntarily dismiss a claim . . . for want of prosecution to prevent undue delays in the disposition of pending cases and to avoid congestion of court calendars." *Abrams v. Orange Cty. Sheriff*, No 6:13–CV–1291–ORL–37, 2014 WL 3057107, *2 (M.D. Fla. July 7, 2014). "[T]o justify dismissal with prejudice as a sanction under Rule 41(b), '[t]here must be both a clear record of willful conduct and a finding that lesser sanctions are inadequate.' " *Brutus v. IRS*, 393 Fed. Appx. 682, 684 (11th Cir. 2010) (quoting *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006)). "This is true because dismissal with prejudice is 'a sanction of last resort, applicable only in extreme circumstances.' " *Id.* (internal citation omitted).

### III. DISCUSSION

### A. Substitution of HPD Advisors for Arthur Gilfus

HDP contends that it was permitted to change the named plaintiff from Gilfus to HDP without seeking leave of the Court pursuant to Federal Rules of Civil Procedure 15(c). Doc. 36 at 4. Rule 15(c) governs when an amended pleading "relates back" to the date of a timely filed

original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations. Fed. R. Civ. P. 15(c). Where an amended pleading changes a party or a party's name, the Rule requires, among other things, that "the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541, 130 S. Ct. 2485, 2489, 177 L. Ed. 2d 48 (2010).

In this case, HDP does not contend that a mistake was made in the original naming of the parties, but rather attempts to replace the original plaintiff with a new plaintiff without notifying the Court or McNally. HDP, relying on *Cifuentes v. Regions Bank*, 11-23455-CIV, 2012 WL 2339317 (S. D. Fla. June 19, 2010), contends that the court in *Cifuentes* allowed the plaintiff to unilaterally change the named party in the amended complaint to the real party in interest. Doc. 36 at 5. This statement is inaccurate. In *Cifuentes*, the plaintiff filed a motion to substitute, which was granted by the Court. 2012 WL 2339317 at *4. Specifically, "[p]aintiffs' counsel . . . filed an amended complaint reflecting these new named [p]laintiffs *and a motion to permit this substitution*." *Id.* (emphasis added). The Court then discussed the propriety of substitution pursuant to Federal Rule of Civil Procedure 17, and whether the substitution related back to the original complaint pursuant to Rule 15. *Id.* at *4-8. The decision in *Cifuentes* undermines HDP's assertion that it can simply alter the heading and substitute a new party plaintiff without moving for substitution. Indeed, HDP has not cited to, and the Court has not found, any law to support the proposition that Rule 15(c) permits a party to simply change the plaintiff with no motion or notice.

HDP further states that its actions were proper under Federal Rule of Civil Procedure 17, which provides:

> The court may not dismiss an action for failure to prosecute in the name of the real
> party in interest until, after objection, a reasonable time has been allowed for the

8

>real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).

As an initial matter, nothing in Rule 17(a)(3) suggests that the real party in interest may ratify, join, or substitute itself into the action simply by filing an amended document reflecting its name in lieu of that of the originally named party. Moreover, the Advisory Committee's comments to this Rule are clear that this provision was added "in the interests of justice," and that "[t]he provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Fed. R. Civ. P. 17, Advisory Comm. Notes, 1966 Amend. Accordingly, "most courts have interpreted . . . Rule 17(a) as being applicable only when the plaintiff brought the action [in the name of the wrong party] as a result of an understandable mistake, because the determination of the correct party to bring the action is difficult." *In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014).

That is not the case here. In this case, neither HDP nor Gilfus has shown—likely because no motion for substitution was filed, despite McNally filing a Motion to Dismiss detailing the impropriety of HDP's unilateral substitution—that an understandable mistake was made. The filings in this case do not show an understandable mistake based on determination of the correct party to the action being difficult to discern. Accordingly, HDP has not shown that it would qualify for substitution pursuant to Federal Rule of Civil Procedure 17.

Moreover, although not raised by McNally, the Court recognizes that the deadline for adding new parties elapsed on June 7, 2019, and the First Amended Complaint was not filed until September 23, 2019. Doc. 22 ¶ 2; Doc. 34. In the event that Gilfus desired to add a new party

9

beyond that deadline, Federal Rule of Civil Procedure 16(b)(4) requires he show good cause and obtain leave of the Court. Gilfus failed to show good cause for adding HDP and failed to receive leave of the Court.

Based on the above, the decision by Gilfus or HDP to replace Gilfus with HDP as the plaintiff in this action was improper. Gilfus and HDP did not make the required showings for substitution or adding a new party. HDP also has not taken any action to intervene in this action, which requires a motion be filed. Fed. R. Civ. P. 24 (stating the requirements under which a court is required or permitted to allow intervention, both of which require a "timely motion"). Accordingly, the proper plaintiff in this action remains Gilfus, HDP remains a non-party to this action, and the First Amended Complaint is not a proper pleading.

### B.     Dismissal as Sanction

McNally contends that this action must be dismissed pursuant to Federal Rule of Civil Procedure 41(b) because Gilfus abandoned his claim by allowing HDP to be listed as the plaintiff on the First Amended Complaint, and violated the Court's Dismissal Order, which directed Gilfus to file an amended complaint. Doc. 35 at 5. Indeed, because HDP is not a party to this action, no amended complaint has been filed by Gilfus as directed by the Court's Dismissal Order. Doc. 32.

McNally also contends that the allegations of the original Complaint, compared to the First Amended Complaint demonstrate abandonment by Gilfus. *Id.* at 6. Because the allegations of the First Amended Complaint mirror those contained in the original Complaint, but allege action and reliance by HDP instead of Gilfus, McNally contends that the allegations are diametrically opposed and Gilfus has abandoned any claim that he took the alleged actions or detrimentally relied on alleged promises. *Id.*

McNally relies on various other flaws in Gilfus' prosecution of this case to demonstrate that dismissal pursuant to Rule 41(b) is proper. Specifically, McNally points to Gilfus' deficient pleading of the citizenship of the parties in the original Complaint, which required the Court to issue an Order to Show Cause; the same deficiency in pleading HDP's citizenship in the First Amended Complaint; and Gilfus' failure to timely file a response to the first Motion to Dismiss, which required the Court to enter an Order directing him to respond. Docs. 1, 7, 15, 35. McNally contends that these actions are a sufficient basis to dismiss this action with prejudice.

The Court agrees that Gilfus' prosecution of this action has been less than exemplary. Indeed, Gilfus' counsel has admitted to not even reading the Dismissal Order before filing the First Amended Complaint on behalf of HDP. Doc. 35 ¶ 5 n.2. However, "to justify dismissal with prejudice as a sanction under Rule 41(b), '[t]here must be both a clear record of willful conduct and a finding that lesser sanctions are inadequate.' " *Brutus*, 393 Fed. Appx. at 684 (quoting *Zocaras*, 465 F.3d at 483. Here, McNally has not shown a clear record of willful conduct. Instead, McNally has pointed to a lack of diligence or perhaps a lack of familiarity with federal court proceedings combined with a failure to become familiarized with such proceedings. The Court has not previously sanctioned Gilfus or cautioned that further misconduct would lead to sanctions, and Gilfus' failure to comply with the Federal Rules and this Court's Order have not been shown to be willful. Under these circumstances, the Court cannot justify dismissing the action with prejudice. *Cf. Lind v. Fla. Civil Commitment Ctr.*, 2:16-CV-3-FTM-29MRM, 2016 WL 4765733, at *2 (M.D. Fla. Sept. 13, 2016) (denying a motion to dismiss a complaint for a single, non-willful violation of a court order). Accordingly, the Court will strike the First Amended Complaint allow Gilfus to file an amended complaint naming the appropriate party. Fed. R. Civ. P. 12(f) (allowing the Court to strike any "redundant, immaterial, impertinent, or scandalous matter.").

However, the Court cautions Gilfus that, absent extraordinary circumstances, no further amendment of the complaint will be permitted. Should Gilfus seek to add or substitute HDP as a party, or should HDP wish to intervene, the appropriate motion must be filed and the applicable standard must be met. The Court expects litigants to be familiar with all applicable federal and local rules and to comply with such rules.

Additionally, although under most circumstances the Court would address the merits of the claims alleged in the First Amended Complaint, as well as McNally's arguments that the First Amended Complaint fails to state a claim, the Court cannot do so because the allegations pertain to HDP, not Gilfus. Accordingly, the Court directs Gilfus to the prior Dismissal Order, which contains an analysis of the relevant claims. Doc. 32. Accordingly, it is

**ORDERED**:

1. Defendant McNally Capital LLC's Combined Motion to (1) Dismiss Plaintiff Gilfus' Action under Federal Rule 41(b); and (2) Dismiss Non-Party HPD Advisors' Complaint Under Federal Rule 24, or in the Alternative, 12(b)(6) (Doc. 35) is **GRANTED-in-part** and **DENIED-in-part**. The First Amended Complaint (Doc. 34) is **STRICKEN.**

2. Arthur Gilfus is granted leave to file an amended complaint within **FOURTEEN (14) DAYS** of this Order. Failure to file an amended complaint that cures the deficiencies noted in this Order and the Court's prior Dismissal Order (Doc. 32) within the time provided will result in dismissal of this action without further notice.

**DONE AND ORDERED** in Tampa, Florida on April 15, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any