# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ARTHUR GILFUS,

    Plaintiff,

v.                                                       Case No: 8:18-cv-2941-CEH-CPT

MCNALLY CAPITAL, LLC.,

    Defendant.
_____/

## ORDER

This matter comes before the Court on Defendant McNally Capital, LLC's Dispositive Motion to Dismiss Second Amended Complaint. Doc. 39. Defendant requests the Court dismiss with prejudice Plaintiff's Second Amended Complaint for failing to state a claim. Plaintiff filed a memorandum in opposition. Doc. 40. The Court, having considered the motion and being fully advised in the premises, will deny Defendant McNally Capital, LLC's Dispositive Motion to Dismiss Second Amended Complaint.

**I.    BACKGROUND**[1]

Plaintiff Arthur Gilfus ("Plaintiff"), along with his two potential partners, sought opportunities in the construction equipment sales industry ("the industry") to

---

[1] The following statement of facts is derived from the Plaintiff's Second Amended Complaint (Doc. 38), the allegations of which the Court must accept as true in ruling on the instant motion. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

acquire and rebuild struggling businesses. Doc. 38, ¶ 10. Plaintiff's approach was to package a multi-tiered business plan that structures a deal from start to finish including identifying targets for acquisition, locating financing options, and preparing a detailed proprietary plan to transform a proposed struggling business into a successful new enterprise. *Id.* ¶ 11. Ultimately, through his endeavors, Plaintiff was referred to Defendant, McNally Capital, LLC, ("Defendant") in 2016. *Id.* ¶ 16. Plaintiff scheduled a teleconference with Defendant to discuss his confidential, tailored, unique and proprietary business plan ("Evaluation Material") for a particular vulnerable target that Plaintiff had identified through his research and knowledge in the industry. *Id.* ¶ 17. Before the conference, Plaintiff and Defendant signed a non-disclosure agreement ("First NDA") in December 2016. *Id.* ¶ 19; *see also* Doc. 38-1. During the January 2017 conference, Ward McNally, on behalf of Defendant, indicated his company's desire to be involved in the specific business plan acquisition. Doc. 38, ¶ 20. Defendant promised during the January 2017 telephone call and multiple times thereafter that any deal arising from Plaintiff's disclosure of the Evaluation Material would include consideration for Plaintiff, including a finder's fee, equity in the new company, and employment. *Id.* ¶ 22.

After assurances of confidentiality, Plaintiff disclosed to Defendant that Nortrax, Inc., a John Deere Construction and Forestry Company ("Deere") franchise in Florida, was the ideal prospect for acquisition and rebuilding. *Id.* ¶ 23. Plaintiff previously worked at Nortrax and another Deere franchise, and he had familiarity with the workings at Deere. *Id.* Defendant did not have the insider knowledge or

2

understanding of the industry as Plaintiff did. *Id.* ¶¶ 25, 26. Under strict confidence and based on Defendant's assurances, promises, and encouragement, Plaintiff provided Defendant with the Evaluation Material. *Id.* ¶ 27. Defendant agreed to protect Plaintiff's anonymity and further agreed that none of the confidential information would be shared without express approval from all parties. *Id.* ¶ 28.

As discussions between Plaintiff and Defendant developed regarding the deal, Defendant proposed the idea of shopping the deal to prospective buyers. *Id.* ¶ 30. Notwithstanding, Defendant appeared to be solely focused on one buyer, Dobbs Management Services, LLC ("Dobbs"). *Id.* ¶ 31. Plaintiff alleges that after multiple communications and meetings, the parties developed a potential deal with Dobbs for acquiring Nortrax pursuant to the confidential Evaluation Material. *Id.* ¶ 32.

As the deal was being developed, a Mutual Non-Disclosure Agreement ("Second NDA") was signed between Defendant and Deere on March 6, 2017. *Id.* ¶ 33; *see also* Doc. 38-2. Soon thereafter, Plaintiff had to sign a joinder in that agreement. Docs. 38, ¶ 34; 38-3. During their business dealings, Plaintiff introduced Defendant to key individuals in the industry beyond the scope of Defendant's traditional business. Doc. 38, ¶ 32. Pursuant to the understanding and agreement of the parties, Plaintiff continued to communicate with Defendant, travelling at his own expense and effort to facilitate the business relationship. *Id.* ¶ 36. As Defendant became more familiar with the industry and confidential materials, it marginalized Plaintiff's role in the deal and excluded Plaintiff while using Plaintiff's confidential materials to pursue the deal. *Id.* ¶ 37. Defendant focused solely on Dobbs as the buyer and developed no other

prospects, contrary to Defendant's representations. *Id.* ¶¶ 39, 40. Defendant's continued violation of the First NDA became more blatant as Defendant and Dobbs' representatives openly utilized and discussed Plaintiff's confidential information without Plaintiff's permission, resulting in damages to Plaintiff. *Id.* ¶¶ 41–44.

Plaintiff confronted Defendant about the unauthorized use of the confidential material and the apparent negotiations occurring without Plaintiff's involvement. *Id.* ¶ 47. Defendant gave Plaintiff reassurances, but as time went on, Defendant actually ignored and excluded Plaintiff from the negotiations, proceeding forward with a deal to acquire Nortrax based on Plaintiff's confidential information, but without Plaintiff. *Id.* ¶¶ 48, 49. Defendant, with Dobbs, purchased Nortrax using Plaintiff's Evaluation Material and to Plaintiff's detriment and exclusion. *Id.* ¶ 53. Plaintiff was not compensated in any respect from Defendant. *Id.* ¶ 52.

Plaintiff sued Defendant in December 2018 in a five-count complaint alleging breach of contract, breach of fiduciary duty, breach of implied duty of good faith and fair dealing, promissory estoppel, and unjust enrichment. Doc. 1. Defendant moved to dismiss the complaint (Doc. 10), and the Court granted Defendant's motion and allowed Plaintiff leave to amend his complaint. Doc. 32. A First Amended Complaint was filed September 23, 2019. Doc. 34. The amended complaint was filed by "HDP Advisors" as Plaintiff. *Id.* at 1. Plaintiff never requested leave to substitute HDP Advisors as the named Plaintiff. Defendant moved to dismiss the amended complaint, which the Court granted. Docs. 35, 37. Thereafter, Plaintiff filed the Second Amended Complaint. Doc. 38. Defendant then filed the instant motion to dismiss the Second

Amended Complaint with prejudice (Doc. 39), and Plaintiff responded in opposition (Doc. 40).

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are insufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not enough. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.    DISCUSSION

Defendant argues the Second Amended Complaint still fails to state a claim against it, and because Plaintiff is on his third attempt, his claims should be dismissed with prejudice. Plaintiff responds that he has adequately pleaded claims against Defendant for breach of contract, breach of fiduciary duty, promissory estoppel, and unjust enrichment, and therefore Defendant's motion should be denied.

A.       **Breach of Contract – Count I**

In Count I, Plaintiff sues Defendant for breach of contract. To state a claim for breach of contract under Illinois law,[2] a plaintiff must allege "the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and resultant damages or injury to the plaintiff. . . . A valid and enforceable contract requires an offer, an acceptance, and consideration."[3] *Sheth v. SAB Tool Supply Co.*, 990 N.E.2d 738, 754 (Ill. App. Ct. 2013) (internal citations and quotations omitted).

The Court previously dismissed Plaintiff's breach of contract claim for failing to identify under which contract Plaintiff was asserting his claim. *See* Doc. 32 at 9. Plaintiff has now clarified that he is suing under the First NDA. In Count I, Plaintiff alleges the parties entered into the First NDA on December 28, 2016. Doc. 38, ¶ 57. Plaintiff performed all conditions under the First NDA by revealing confidential Evaluation Material and other valuable information to Defendant, who was previously unaware of such information. *Id.* ¶ 59. Plaintiff shared the confidential information with Defendant in consideration for Defendant's promises. *Id.* ¶ 61. Defendant materially breached the First NDA when it used and shared the

---

[2] The First NDA provides that the agreement is governed by the laws of Illinois. Doc. 38-1 at 3. Additionally, the parties agree that Illinois law governs Plaintiff's breach of contract claims, *see, e.g.*, Doc. 39 at 6; Doc. 40 at 3. The Court applies Illinois law to Count I.
[3] Both parties cite to Florida case law, but the elements under Illinois law are the same. *See Alpha Sch. Bus Co. v. Wagner*, 391 910 N.E.2d 1134, 1158 (2009) ("To state a cause of action for breach of fiduciary duty, a plaintiff must allege and ultimately prove (1) a fiduciary duty on the part of the defendant, (2) a breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury.").

confidential Evaluation Material without Plaintiff's authorization. *Id.* ¶ 62. The disclosure of the confidential material by Defendant was done without express authorization by Plaintiff. *Id.* ¶ 63. The Nortrax deal would not have occurred without the unauthorized disclosure of information. *Id.* ¶ 64. As a result of Defendant's breach, Plaintiff suffered damages. *Id.* ¶ 65. The Court finds these allegations are sufficient to state a claim for breach of contract.

Defendant argues Plaintiff fails to state a claim for breach of contract because disclosure of the confidential information to Dobbs was permitted by the contract. Doc. 39 at 4. According to Defendant, since Dobbs was a potential financing source, any disclosure to Dobbs was not only contemplated by the agreement but authorized by it. In pertinent part, the First NDA states:

> [A]ny of such information may be disclosed to its officers, employees, advisors, clients, agents, potential financing sources and representatives . . . who need to know such information for the purpose of evaluating any such possible transaction between the Company[4] and McNally[.]

Doc. 38-2 at 2. While Defendant argues that Dobbs was a "potential financing source," the Court must accept Plaintiff's well-pleaded allegations as true. Plaintiff alleges that the disclosure to Dobbs was "unauthorized," and that no disclosure was permitted absent express prior approval from Plaintiff. The language of the First NDA reflects that disclosure is permitted in connection with "evaluating a possible transaction

---

[4] "Company" is identified in the First NDA as "[a]n entity to be formed including the following individuals: Terry North, Art Gilfus, Mark Hollister, related to the Nortrax Venture." Doc. 38-1 at 2.

between the Company and McNally." But according to Plaintiff, the disclosure to Dobbs did not occur for purposes of Dobbs' evaluation of a deal between Plaintiff and Defendant, but rather was surreptitiously done as Plaintiff was being completely cut out of the deal. Plaintiff adequately alleges the existence of a contract, Plaintiff's performance under the contract, Defendant's breach, and resulting damages to state a cause of action for breach of contract.

Defendant additionally argues Plaintiff fails to sufficiently plead damages because Plaintiff cannot rely on Defendant's alleged oral promises to provide him a finder's fee, equity, and an employment contract as those terms are not provided for in the written contract. Defendant is correct that these specific terms of renumeration are not contained in the agreement. However, review of the Second Amended Complaint reveals Plaintiff has adequately alleged he sustained damages because of Defendant's breach. Plaintiff alleges he incurred expense and effort due to Defendant's representations and breach of the First NDA. Doc. 38, ¶¶ 36, 40. Plaintiff alleges he suffered damages as a result of Defendant's breach of the First NDA. *Id.* ¶¶ 41, 52, 54, 65. The motion to dismiss is due to be denied as to Count I.

B. **Breach of Fiduciary Duty**

To state a claim for breach of fiduciary duty, Plaintiff must plead: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) that such breach was the proximate cause of his damages. *See Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). The Florida Supreme Court has described a fiduciary relationship in the following manner:

> The relation and duties involved need not be legal; they may be moral, social, domestic or personal. If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief. The origin of the confidence is immaterial.

*Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002) (citation and emphasis omitted).

In Count II Plaintiff alleges that the parties entered into what was initially an arms-length relationship in which disclosure of confidential information was protected by the First NDA. Doc. 38, ¶ 68. As the relationship progressed, Defendant deliberately solicited Plaintiff's trust by asking for Plaintiff's signature on a joinder to the Second NDA between Deere and Defendant. *Id.* ¶ 69. The terms of the joinder compelled Plaintiff to forgo independent opportunities with Deere, which Plaintiff agreed to do in reliance on Defendant's representations it would honor the agreement it had with Plaintiff. *Id.* ¶ 70. In reliance on the fiduciary relationship with Defendant, Plaintiff did not attempt to market his Evaluation Material to others. *Id.* ¶ 72. Defendant breached the fiduciary relationship by using Plaintiff's Evaluation Material to Plaintiff's detriment and exploiting Plaintiff's trust by renewing Defendant's lure of consideration to solidify the Nortrax deal without Plaintiff. *Id.* ¶ 74. As a result of Defendant's breach of fiduciary duties, Plaintiff suffered damages. *Id.* ¶ 75.

Defendant moves to dismiss Count II arguing Plaintiff fails to allege facts to create the existence of a fiduciary relationship under Florida law. Specifically, Defendant contends this is an arms-length business transaction and Plaintiff alleges no facts to support a fiduciary relationship. Generally, in an arms-length transaction,

9

"there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered." *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1367 (S.D. Fla. 2015) (citing *Watkins v. NCNB Nat'l Bank, N.A.*, 622 So.2d 1063, 1065 (Fla. 3d DCA 1993)).

To state a claim for a breach of a fiduciary or confidential relationship, "a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Watkins v. NCNB Nat. Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993) (quoting *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989)). Defendant contends that Plaintiff makes no allegation of any undertaking by Defendant to raise their dealings beyond an arms-length relationship. Defendant also argues that an oral confidentiality agreement alone cannot give rise to a fiduciary relationship. *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180 (M.D. Fla. 2005) ("oral non-disclosure agreement existed between the parties is not sufficient, without more, to create a confidential or fiduciary relationship").

Accepting Plaintiff's well-pleaded allegations as true, the court finds Plaintiff relies on more than an oral confidentiality agreement to support his claim of a fiduciary relationship. Specifically, Plaintiff alleges Defendant "deliberately sought Plaintiff's trust and confidence as they worked, discussed and built on Plaintiff's Evaluation Material and business plan." Doc. 38, ¶ 69. Plaintiff alleges Defendant solicited Plaintiff's trust by asking Plaintiff to sign the joinder to the Second NDA between

10

Defendant and Deere. *Id.* Defendant argues these allegations are not enough citing to the Court's prior order. However, the prior order found that Plaintiff pled no ultimate facts identifying the basis for the fiduciary relationship. Taking Plaintiff's allegations as true, the Second Amended Complaint has done that now, and the motion to dismiss as to Count II is due to be denied. Because the existence of a fiduciary relationship is a fact-intensive inquiry, the Court concludes such determinations are more appropriate on a more fully developed record. *See, e.g., Catano v. Capuano*, No. 18-20223-CIV, 2020 WL 639406, at *12 (S.D. Fla. Feb. 11, 2020) (Torres, J.) ("[A] claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6) because it is often impossible to say that [a] plaintiff will be unable to prove the existence of a fiduciary relationship.") (internal quotation marks and citation omitted); *My Classified Ads, L.L.C. v. Greg Welteroth Holding Inc.*, No. 8:14-CV-2365-T-33AEP, 2015 WL 1169857, at *9 (M.D. Fla. Mar. 13, 2015) (Covington, J.) ("The determination of whether a fiduciary duty did in fact exist, and whether it was based on an implied relationship or express relationship . . . is better suited for the summary judgment stage of the proceedings.").

**C.     Alternative Equitable Claims - Promissory Estoppel & Unjust Enrichment**

In Counts III and IV, Plaintiff asserts promissory estoppel and unjust enrichment as alternative claims to his claims based on contract. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively . . ., either in a single count . . . or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

In Florida, "[a] cause of action for promissory estoppel contains three elements: that the plaintiff detrimentally relied on the defendant's promise, that the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance by the plaintiff, and that injustice can only be avoided by enforcement of the promise. *Morse, LLC v. United Wis. Life Ins. Co.*, 356 F. Supp. 2d 1296, 1300 (S.D. Fla. 2005) (citing *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 302 (Fla. 1st DCA 1999)).

In Count III Plaintiff alleges that Defendant promised to provide Plaintiff with a finder's fee, equity in the purchase of the new company, and an employment contract. Doc. 38, ¶ 77. Plaintiff further alleges he relied on these promises as consideration for disclosing confidential information and in anticipation of a "go-forward" venture. *Id.* ¶¶ 77, 80. Defendant knew its promises would induce Plaintiff to provide the confidential information. *Id.* ¶ 79. Plaintiff has lost the value in the confidential information and the ability to pursue other deals such that enforcement of Defendant's promises is necessary to avoid injustice. *Id.* ¶¶ 82–84. Count III states a claim for promissory estoppel.

To establish a claim for unjust enrichment in Florida,

> a plaintiff must show (1) that the plaintiff conferred a benefit on the defendant, who has knowledge thereof; (2) that the defendant voluntarily accepted and retained the benefit conferred; and (3) that the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

*Spears v. SHK Consulting & Dev., Inc.*, 338 F. Supp. 3d 1272, 1277 (M.D. Fla. 2018) (citations and internal quotation marks omitted).

In Count IV, Plaintiff alleges that he provided Defendant exclusive benefits including access to the Evaluation Material and other valuable information along with introductions to individuals in the industry, that Defendant voluntarily accepted and retained these benefits, and that Defendant failed to provide consideration to Plaintiff for the benefits received. Doc. 38, ¶¶ 86–90. As a result, it would be unjust for Defendant to retain the benefits without paying for them. *Id.* ¶ 91. These allegations are sufficient to state a claim for unjust enrichment under Florida law.

Defendant argues that the contracts at issue are not in dispute, and therefore, Plaintiff is precluded from seeking alternative quasi-contractual relief by way of promissory estoppel or unjust enrichment. However, Plaintiff has alleged equitable claims based on representations and promises by Defendant and considerations provided by Plaintiff that are not contained in the written contracts. The Florida Supreme Court recognized:

> it has become quite customary, in an abundance of caution, to join the common counts [*i.e.*, unjust enrichment] with the special count which declares on the express contract, so that, if for any reason the plaintiff fails in his proof of the express contract, he may have an opportunity to at least recover the value of the work actually done or the materials actually furnished, or so much thereof as have not been paid for, upon an implied contract.

*ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997) (quoting *Hazen v. Cobb–Vaughan Motor Co.*, 96 Fla. 151, 117 So. 853 (1928)). At this stage of the

proceedings, Plaintiff has adequately pleaded his equitable claims in the alternative to his contract-based claims. The motion to dismiss as to Counts III and IV is therefore due to be denied.

Accordingly, it is hereby

**ORDERED**:

1. Defendant's McNally Capital, LLC's Dispositive Motion to Dismiss the Second Amended Complaint (Doc. 39) is **DENIED**.

2. Defendant shall file an answer to Plaintiff's Second Amended Complaint within **fourteen (14) days**.

3. By **March 26, 2021**, the parties shall submit an amended Case Management Report.[5]

**DONE AND ORDERED** in Tampa, Florida on March 8, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

---

[5] In preparing an amended case management report, the parties should utilize the Uniform Case Management Report form per the new Local Rules (effective Feb. 1, 2021). https://www.flmd.uscourts.gov/local-rules